Harry SLEY et al.

v.

JAMAICA WATER AND UTILITIES, INC., et al.

Civ. A. No. 70–2974.

United States District Court, E. D. Pennsylvania.

Dec. 12, 1977.

Edwin P. Rome, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for plaintiffs.

Aaron M. Fine, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

VanARTSDALEN, District Judge.

### I.

On the eve of trial of this complex class action securities lawsuit, now in its seventh year and reassigned to its fourth judge, its various defendants have moved to decertify the plaintiff class and to disqualify plaintiffs' counsel. For the reasons set forth herein, those motions will be denied.

### II.

In a lengthy prior opinion sur motions for summary judgment, the court attempted to describe the factual background prompting this lawsuit. *Sley v. Jamaica Water and Utilities, Inc.,* Civil No. 70–2974 (E.D.Pa. filed April 15, 1977). There is no need to repeat such an exercise as a mere highlighting of the facts and allegations salient to the present motions will suffice.

During the late spring of 1969 the defendant, Jamaica Water and Utilities, Inc. (Jamaica), purchased a 51% interest in the Welsbach Corporation (Welsbach) through a privately negotiated transaction with various individual, corporate and fiduciary Welsbach shareholders. Jamaica then formed a Delaware corporate subsidiary, the James R. Campbell Corporation (Campbell Corp.), and effectuated a merger between Welsbach and Campbell Corp. As a result, outstanding Welsbach shares were exchanged for Jamaica shares and Welsbach became a wholly owned Jamaica subsidiary. The named plaintiffs, owning approximately a 30% interest in Welsbach, refused this exchange and sought relief in both state[1] and federal court. Basically, the plaintiffs' fourth amended complaint seeks damages for alleged violations of federal securities law and state corporate and fiduciary law, all arising out of an alleged tender offer, stock sale, merger and "squeeze-out" of the Welsbach minority interests. There are a total of thirty-seven (37) corporate, partnership, fiduciary and individual defendants covering practically every entity in any way involved in any of the transactions described above. The complaint invokes almost the entire panoply of anti-fraud provisions of the federal securities statutes, and also other provisions gov-

---

1. Under Delaware corporate law, dissenting shareholders have a right to be paid in cash for the fair value of their stock through appraisal proceedings. It is understood that most if not all of the plaintiff-shareholders have initiated such proceedings which proceedings have been held in abeyance pending the outcome of this litigation.

erning the trading of corporate securities. There are five named plaintiffs and sixteen intervenor plaintiffs who are prosecuting this case on behalf of a certified class of all owners of Welsbach common stock who did not sell their stock to Jamaica on June 19, 1969.[2] The named plaintiffs are Harry Sley, Harry Sley and Beatrice Sley as joint tenants, Beatrice Sley, and two corporations controlled by Harry Sley. The intervenor plaintiffs include but are not limited to the estate of Isadore Sley,[3] a trust of Isadore Sley, the trust of Ronald Sley, the trust of Betsy Ann Grossman Sley, the trust of Benjamin H. B. Sley, and several corporations controlled by Isadore Sley. Throughout the course of this litigation all of the above plaintiffs and intervenor plaintiffs have been loosely referred to as the "Sley group" or the "Sley interests."

The fourth amended complaint proceeds on a variety of factual and legal theories and charges violations of many provisions of the federal securities laws. A number of these theories implicate members of the Welsbach board of directors, which at all relevant times included the intervenor plaintiff Isadore Sley. In particular, one of the theories charges that the Welsbach board and/or its individual members had a duty to convey to the minority shareholders not only the existence and details surrounding an alleged Jamaica tender offer but also the existence of at least one other alleged tender offer communicated to the Welsbach board prior to that of Jamaica. As a director, the intervenor plaintiff class representative Isadore Sley is potentially liable under the allegations set forth by the complaint; in fact, many of the counterclaims filed by the defendants seek, *inter alia,* contribution or indemnity from Isadore Sley and the so-called Sley interests for the participation of Isadore Sley, as a Welsbach director, in the Welsbach takeover.

As a corollary, the movants point out and judicial notice is taken of the fact that the estate of Isadore Sley has filed a separate civil suit in this district against Jamaica, Welsbach, and the American Home Assurance Company, the latter being an insurance carrier alleged to have issued a directors' and officers' liability insurance policy for Welsbach directors including Isadore Sley. *Wachs v. American Home Assurance Co.,* Civil Action No. 77–1179 (E.D.Pa., filed March 31, 1977).[4] The gist of this action would appear to be that the insurance carrier has repudiated coverage for the claims made against Isadore Sley by various plaintiffs and intervenor plaintiffs in the present action. These claims are for the recovery of all fees, costs and expenses incurred in defending the counterclaims against them which are premised upon the alleged actions and omissions of Isadore Sley.

Primarily for the reasons stated above, certain defendants request the court to recognize "irreconcilable conflicts" between the interests of the Sley group and those of the remaining members of the class whom they purport to represent. These conflicts are offered as grounds for decertification of the class and disqualification of counsel. The legal thrust of the motion is that the representative parties have interests atypical of the class and they cannot fairly and adequately protect the interests of the class members. Fed.R.Civ.P. 23(a)(3), (4).

### III.

Initially, I note with interest, as have Judge Luongo of this district and Judge Higginbotham, now of the Third Circuit Court of Appeals, a motion presented by the defendants which is ostensibly grounded on a concern for the adequacy of the plaintiffs' representation of the class. *See Fox*

---

**2.** An order that this action shall be maintained as a class action was entered by Judge Masterson on May 11, 1971. Leave to intervene as party plaintiffs was granted the intervenor plaintiffs on January 29, 1971. The record leaves little question that the intervenor plaintiffs as well as the originally named plaintiffs are class representatives.

**3.** For purposes of clarity, hereinafter referred to as Isadore Sley.

**4.** By order dated November 1, 1977, Civil Action No. 77–1179 was transferred from the docket of Judge Broderick to my docket as a case related to the case *sub judice.*

*v. Prudent Resources Trust,* 69 F.R.D. 74, 79 (E.D.Pa.1975); *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 275 (E.D.Pa. 1975). As Judge Higginbotham noted in *Umbriac,* defendants who take such a position on class certification or decertification motions are realistically not concerned with the "best" representation for the plaintiff class but rather their goal is to ensure "no" representation. Nevertheless, it is incumbent upon me to consider the merits of this motion notwithstanding the possible motives for its filing.

 As noted in the margin, note 2 *supra,* this case was certified as a class action more than six years ago. Although the order certifying the class was unaccompanied by a formal opinion, there is no doubt Judge Masterson was mindful, as I am now, of the general acknowledgment in the caselaw that suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that rule 23 is to be liberally construed to that end. *Kahan v. Rosenstiel,* 424 F.2d 161 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed. 290 (1970); *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366 (E.D.N.Y.1973). On the other hand, there is little question that under the appropriate circumstances a class once certified can be decertified. *Link v. Mercedes-Benz,* 550 F.2d 860 (3d Cir. 1977); *Samuel v. University of Pittsburgh,* 538 F.2d 991 (3d Cir. 1976); *Zenith Labs., Inc. v. Carter-Wallace, Inc.,* 530 F.2d 508 (3d Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976). Applying a "law of the case" rationale, a class once certified on the basis of the requirements of rule 23(a) and 23(b) should be decertified only where it is clear there exist changed circumstances making continued class action treatment improper.

The federal rule governing class actions provides that as one of four prerequisites to the certification of a class the claims of the representative parties must be *typical* of the claims of the class. Fed.R.Civ.P. 23(a)(3). In addition, it is required that the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). As to the typicality requirement, research fails to uncover a precise definition or set of standards to be employed in assessing whether a proposed class representative's claims are typical of those of the proposed class. The cases and authorities suggest that the typicality and adequacy requirements represent a two-pronged approach intended to insure that the claims of the class members are fully presented and vigorously prosecuted. *See Sharp v. Coopers & Lybrand,* 70 F.R.D. 544, 548 (E.D.Pa.1976); *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n,* 66 F.R.D. 581, 586–87 (E.D.Pa.1975); C. Wright & A. Miller, *Federal Practice and Procedure,* § 1764, p. 610–12 (1972). It has also been stated that the typicality requirement functions as a safeguard against inter-class conflicts and an assurance that the plaintiff's interests are more or less co-extensive with those of the class. *Sommers, supra; Mersay v. First Republic Corp.,* 43 F.R.D. 465 (S.D.N.Y.1968). In other words, the rule speaks for itself; the class representative's claims must be "typical" in that his or her litigative posture must be sufficiently co-extensive with those of the class such that the class members' causes of action are fully, fairly and vigorously prosecuted. *See Blackie v. Barrack,* 524 F.2d 891, 910 (9th Cir. 1975). In conjunction with subpart (a)(4), rule 23(a)(3) contemplates one of the basic concepts undergirding the class action: a commonality of interests amongst the class.

 I am not persuaded at this stage of the litigation that the posture of intervenor-plaintiff, Isadore Sley, or any member of the Sley group is not typical or that they cannot fully and adequately protect the interests of the class. Moving defendants argue strenuously that defenses and counterclaims applicable to Isadore Sley and the Sley group render their position atypical and, along with the existence and background of Civil Action No. 77–1179, create a conflict within the class requiring decertification. However, the mere fact that a representative plaintiff stands in a different

factual posture is not sufficient to refuse certification. *Sharp v. Coopers & Lybrand, supra; Mersay v. First Republic Corp., supra.* The atypicality or conflict must be clear and must be such that the interests of the class are placed in significant jeopardy. *See Sol. S. Turnoff Drug Dist., Inc. v. N. V. Nederlandsche,* 51 F.R.D. 227 (E.D.Pa.1970). The defenses and counterclaims peculiar to Isadore Sley are premised upon allegations yet to be proven. As the court is not permitted to inquire into the merits in considering class action matters, *Richardson v. Hamilton International,* 62 F.R.D. 413 (E.D. Pa.1974), for purposes of this motion the conflict does not exist. Moreover, whether Isadore Sley's conduct as a Welsbach director is to be imputed to all of the so-called Sley interests on an agency basis must await a specific factual determination. To the extent that Civil Action No. 77–1179 proceeds on the underlying allegations that Isadore Sley engaged in certain misconduct attributable to all the Sley interests, those allegations are likewise insufficient grounds to decertify the class and disqualify counsel.

Moreover, it is important to point out that in addition to Isadore Sley and the other Sley plaintiffs and intervenor plaintiffs, there appear to be at least seven intervenor plaintiff class representatives who are not members of the Sley group and who would not suffer from any of the alleged frailties attributed to the Sley group. This latter group of plaintiffs, from the uncontroverted pleadings, clearly have substantial personal stakes in this lawsuit and appear to more than fully satisfy the requirements of rule 23(a). This factor is certainly germane to any certification or decertification considerations. *See Blackie v. Barrack, supra,* at 911.

Defendants rely upon two decisions in support of the motion for decertification which require very brief discussion. In *Zenith Labs., Inc. v. Carter-Wallace, Inc.,* 530 F.2d 508 (3d Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976), the court of appeals for this circuit affirmed the district court's decertification order on the basis that the defendant could assert defenses against the representative plaintiff which were not applicable to the members of the class. There are two factors which distinguish that case from the case *sub judice.* First, in *Zenith* the class representative was the *only* class representative and, therefore, a defense successfully asserted against it would, at the least, severely disadvantage the members of the class. Second, the court of appeals found it significant that the defenses peculiar to the class representative "could conceivably become the focus of the entire litigation and divert much of [the class representative's] attention from the suit as a whole." *Id.* at 512. Here, there are at least twenty plaintiff and intervenor plaintiff class representatives, at least seven of whom are arguably not subject to defenses and counterclaims peculiar to Isadore Sley or the Sley group. In addition, I cannot find at this time that these defenses or counterclaims are so critical to the ultimate disposition that they would unfairly become the "focus of the entire litigation" and divert the attention of the class representatives.

In *Koos v. First National Bank,* 496 F.2d 1162 (7th Cir. 1974), the Seventh Circuit Court of Appeals affirmed a district court order denying the certification of a class. The court held that where it is predictable that a major focus of the litigation will be on an alleged defense unique to the named plaintiff, that plaintiff is not a proper class representative. There the two named plaintiffs were apparently a husband and wife who had executed a joint loan and were seeking statutory damages for the imposition of usurious interest rates. As in *Zenith, all* of the named plaintiffs were subject to a defense unique to them but inapplicable to the proposed class. For the same reasons that *Zenith* was distinguished, *Koos* is not persuasive.

I am aware of the potential grave interclass conflicts which have been suggested. Those contentions may be tabled until a more appropriate time for their resolution. Wisely, the authors of rule 23 provided a mechanism in subpart (c) to deal with special problems concerning individual members of the class which arise during the

course of class action litigation. The rule grants the district court sufficient power and discretion to resolve problems of interclass conflict or manageability if and when such problems clearly arise. *See Muth v. Dechert, Price and Rhoads,* 70 F.R.D. 602 (E.D.Pa.1976); *In re Caesars Palace Securities Litigation, supra.*

The motion to decertify will be denied.

### IV.

 Because I am not persuaded there presently exist sufficient grounds to decertify the class, and because I am not independently convinced that there exists or appears to exist a conflict of interest between any of the parties or class members represented by plaintiffs' counsel, the motion for disqualification of counsel will be denied.