**In re GLASSINE AND GREASEPROOF PAPER ANTITRUST LITIGATION.**

**No. 80–891.**

United States District Court,
E. D. Pennsylvania.

Nov. 6, 1980.

John G. Harkins, Jr.; Lawrence Z. Shiekman and Deborah F. Cohen of Pepper, Hamilton & Scheetz, Philadelphia, Pa., Paul Noelke, W. Stuart Parsons, Michael E. Schaalman, Gerald Miller of Quarles & Brady, Milwaukee, Wis.; Samuel E. Dennis, Aaron Beyer, J. S. Ruder of Meltzer & Schiffrin, Philadelphia, Pa., for defendants.

David Berger, Merrill G. Davidoff, Howard Langer, Philadelphia, Pa., for plaintiff Ajax Paper Tube Company, Inc.; Berger & Montague, P. C., Philadelphia, Pa., of counsel.

Harold E. Kohn, Dianne M. Nast, Philadelphia, Pa., for plaintiff East Side Foods, Inc.; Kohn, Savett, Marion & Graf, P. C., Philadelphia, Pa., of counsel.

Aaron M. Fine, Arthur M. Kaplan, Philadelphia, Pa., for plaintiff Anchor Paper Company, Inc.; Fine, Kaplan & Black, Philadelphia, Pa., of counsel.

Warren Rubin, Bernard M. Gross, Philadelphia, Pa., for plaintiff Commercial Card & Paper Co.; Gross & Sklar, P. C., Philadelphia, Pa., of counsel.

Harvey S. Kronfeld, Paul C. Madden, Philadelphia, Pa., for plaintiff Goldenberg Candy Co.; Rawle & Henderson, Philadelphia, Pa., of counsel.

Arnold Levin, Josephine B. Stamm, Philadelphia, Pa., for plaintiff Salsburg Meats, Inc.; Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., of counsel.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiffs have brought this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain relief for injuries allegedly suffered by them and the class they seek to represent resulting from the defendants' alleged violations of Section 1 et seq. of the Sherman Act, 15 U.S.C. § 1 et seq. This court has jurisdiction over the controversy pursuant to 28 U.S.C. § 1337 and 15 U.S.C. § 1.

Plaintiffs have filed a motion to maintain this action as a class action pursuant to Rule 23. For the reasons stated below, plaintiffs' motion will be granted.

### A.

Plaintiffs have alleged that the defendants, manufacturers and sellers of glassine and greaseproof paper, beginning at least as early as January, 1973, and continuing at least until August, 1976, engaged in a continuous combination and conspiracy to (Complaint ¶ 11):

... raise, fix, maintain and stabilize the prices and terms and conditions of sale of glassine and greaseproof paper.

They further allege that the alleged conspiracy had the effect, *inter alia*, of fixing the prices, terms and conditions of sales at artificial, non–competitive levels, thereby depriving purchasers of the benefits of free and open competition; and restraining competition amongst the defendants in the sales of glassine and greaseproof paper. Glassine and greaseproof paper are defined, in paragraph 8 of the complaint, as:

... dense specialty papers and includes, among others, all forms of glassine paper, greaseproof paper, pouch paper, high pressure laminate paper and pressure sensitive release backing paper. Glassine and greaseproof paper are widely used for protective packaging of many foods, pharmaceuticals, tobaccos, soaps, chemicals, cosmetics and machine parts. They have many other uses including separator sheets for plastics, windows in envelopes, drafting and reproduction papers, and decorative and insulating materials. Glassine and greaseproof paper are used plain, waxed, printed, lacquered, embossed, laminated, laminated to other packaging materials and heatseal and metallic coated.

Plaintiffs seek class certification pursuant to Rule 23(a) and 23(b)(3). They must therefore demonstrate that they meet the requirements of these sections.

## B.

### The Requirements of Rule 23(a)

1. *Numerosity*

■ While neither plaintiffs nor defendants have exact figures as to the number of members of the class, the number appears, at the minimum, to be in the hundreds. Such a large number would make the joinder of all the members of the class impracticable; hence the numerosity requirement of Rule 23(a)(1) is clearly satisfied.

2. *Commonality*

In order to prevail on the merits in their antitrust claims, every member of the class would have to establish the existence of a conspiracy amongst the defendants to affect the prices, and restrain competition in the sales of glassine and greaseproof paper. As the questions relating to the existence, scope and efficacy of the alleged conspiracy are common to the class, the commonality requirement of Rule 23(a)(2) is satisfied. *In Re Fine Paper Antitrust Litigation*, 82 F.R.D. 143 (E.D.Pa.1979).

3. *Typicality*

■ Rule 23(a)(3) does not require that a representative's claims be identical to those of his class; they only need be sufficiently similar to allow the court to conclude that (1) the representative will protect the interests of the class, and (2) there are no antagonistic interests between the representative and the proposed class. *Hedges Enterprises v. Continental Group, Inc.*, 81 F.R.D. 461 (E.D.Pa.1979); *In Re Plywood Antitrust Litigation*, 76 F.R.D. 570 (E.D.La.1976). The claims of the plaintiffs who purchased glassine and greaseproof paper from any defendant are typical of those of the proposed class as the claims are that they were injured by purchasing glassine and greaseproof paper under artificial, anti–competitive conditions caused by a conspiracy amongst the defendants.

Defendants contend that plaintiffs' claims are not typical because one of them, East Side Foods, Inc., did not purchase from the defendants during the relevant period,[1] and the others only purchased small quantities of standardized products at list prices, whereas several members of the proposed class purchased large volumes of non–standard products at negotiated prices.

Any plaintiff who did not purchase glassine or greaseproof paper from one of the defendants may not act as a representative of the proposed class. At least three of the plaintiffs–Anchor Paper Company, Commercial Card & Paper Company and Goldenberg Paper Company–have made purchases during the relevant period. As to these plaintiffs, defendants' argument that their claims are not typical of those of purchasers of large volumes of non–standardized products is not convincing. Typicality is not destroyed because a representative's claim presents a somewhat different factual pattern:

> ... [T]he mere fact that a representative plaintiff stands in a different factual posture is not sufficient to refuse certification.... [T]he atypicality or conflict must be clear and must be such that the interests of the class are placed in significant jeopardy.

*Sley v. Jamaica Water & Util., Inc.*, 77 F.R.D. 391, 395 (E.D.Pa.1977). While purchaser–plaintiffs' claims are not identical to those of purchasers of non–standardized products, they are not so dissimilar as to jeopardize the interests of purchasers of non–standardized products. Plaintiffs have a significant interest in establishing the existence of a conspiracy which affected the sales of glassine and greaseproof paper, and this interest does not seem divergent from

---

1. If East Side Foods, Inc. did not in fact purchase glassine and greaseproof paper from the defendants during the relevant period, it would not be a member of the proposed class, and would have to be dismissed from this litigation. As this involves disputed issues of fact, I will reserve this issue for a later date.

an interest in establishing the existence of a conspiracy which affected the sales of non–standardized types of glassine and grease-proof paper. Nor is there significance in the fact that plaintiffs purchased at list prices, whereas volume buyers negotiated their prices. Plaintiffs allege that prices were set at non–competitive levels: such market conditions would affect the prices paid by both types of purchasers, and their interests would be congruent.[2]

### 4. Adequacy of Representation

Plaintiffs satisfy the requirements of Rule 23(a)(4) in that (1) they have retained experienced counsel who can competently and vigorously prosecute this action, and (2) the interests of the class and the plaintiffs are sufficiently similar that it is unlikely that there will be a divergence in their goals and viewpoints in the conduct of the suit.[3] *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977).

Defendants argue, however, that there are special problems posed by the fact that certain absent members of the proposed plaintiff class are currently defendants in other litigation in which plaintiffs are represented by certain of the attorneys representing plaintiffs in this case.[4] In *In Re Fine Paper Antitrust Litigation*, 617 F.2d 22 (3d Cir. 1980), defendant Kimberly–Clark sought to disqualify plaintiffs' attorney on the grounds that he also represented a class of plaintiffs in other litigation in which Kimberly–Clark was an absent class member. After the district court denied the motion, Kimberly–Clark sought an immediate review of the order. In determining that defendant had not suffered such irreparable harm as might warrant collateral review, the Court of Appeals for the Third Circuit identified two sources of potential ethical problems: (1) Canon 4 which, in order to encourage clients to confide freely in their attorneys without fear that their confidences might be used against them, prohibits an attorney from proceeding against a client; and (2) Canon 5 which proscribes divided loyalties which could impair a lawyer's independent judgment. The Court of Appeals found that both problems were minimal since Kimberly–Clark, an absent class member in the first litigation, had never communicated with the attorneys representing the class.

█ While it is clear that different standards must be applied in determining whether class certification is proper, the usual situation in which a dealer in automobile spare parts who had never sought to purchase spare parts from any of the defendant manufacturers was seeking to represent a nation–wide class of dealers in a claim that defendants had refused to sell spare parts to members of the class.

**2.** Defendant St. Regis Paper Company asserts that it might have a *res judicata* defense against some of the plaintiffs in this action because of a settlement in a prior litigation. If this should prove to be the case, this might well impair the typicality of those plaintiffs' claims and of their ability to represent the class adequately with respect to the claims against St. Regis; I see no need, however, to resolve this issue at this stage of the proceedings, and reserve it for a later date when discovery will have proceeded sufficiently to develop the record necessary for the resolution of this issue.

**3.** Defendants also suggest that plaintiffs must show that they (1) have the financial ability to maintain this action, and (2) have personal knowledge as to the material facts of this suit. There can be no serious doubt that plaintiffs have the financial ability to maintain this action. Moreover, class representatives in complex cases of this nature are not usually required to have first–hand knowledge of the facts needed to establish their claims. *Axelrod v. Saks & Co.*, 77 F.R.D. 441 (E.D.Pa.1978). *Apanewicz v. General Motors Corp.*, 80 F.R.D. 672 (E.D.Pa.1978), relied on by defendants in support of their contention, presented an un-

**4.** Defendants assert that Berger & Montague, P.C.; Fine, Kaplan & Black; McGovern, Opperman & Paquin; and Adler, Barish, Daniels, Levin & Creskoff represent named representatives of the class which is currently suing Westvaco Corporation in the *Corrugated Container Antitrust Litigation*, 441 F.Supp. 921 (S.D.Tex.). Westvaco is one of the absent members of the class in this litigation, and apparently has one of the larger claims. Defendants also assert that Gross & Sklar represent individual members of the class in that suit. Defendants assert further that Kohn, Savett, Marion & Graf, P.C., and Rawle & Henderson have been involved in suits against other members of the purchaser class in *Hedges Enterprises, Inc. v. Continental Group, Inc., et al.*, 81 F.R.D. 461 (E.D.Pa.).

situation presented here offers less possibility of actual conflict of interest than that in *In Re Fine Paper.* The alleged conflict here is that certain absent members of the plaintiff class are defendants in other actions in which some of the class attorneys represent plaintiffs. Under these circumstances, there would be no confidential disclosures in the other actions which could be used here. Nor are counsel likely to suffer divided loyalties in this suit in which all their clients are plaintiffs. Moreover, several of the counsel retained by plaintiffs are free of these sources of potential conflict. I conclude, therefore, that there is no ground for supposing that plaintiffs will not adequately represent the class. If conflicts of interest later develop, affected parties may petition this court for such relief as is then appropriate.

### The Requirements of Rule 23(b)(3)

To maintain a class action under Rule 23(b)(3), plaintiffs must show that (1) questions of law and fact common to the class predominate over individual questions, and (2) the class action device is superior to other methods of handling this litigation. Defendants argue that given the range of products and pricing methods, individual questions predominate with respect to the existence of a conspiracy, the impact of the conspiracy on the plaintiffs, and the amount of damages. This argument is frequently made in antitrust cases, and is usually rejected where the conspiracy issue is the overriding one. *In Re Folding Carton Litigation*, 75 F.R.D. 727, 734 (N.D.Ill.1977). In the instant litigation, common questions predominate in three elements of plaintiffs' claims: (1) the existence and scope of a conspiracy to affect the market in glassine and greaseproof paper; (2) the impact of the alleged conspiracy; and (3) the issue of fraudulent concealment.

### The Existence of a Conspiracy

Plaintiffs have alleged that defendants engaged in a course of conduct amongst them to affect the market in glassine and greaseproof paper. Plaintiffs have demon-strated that "glassine and greaseproof paper" is a well-defined product, and is recognized as such by trade journals, dictionaries, and most persuasively, by the defendants themselves who aggregate their numerous products in a small number of categories for the purposes of compiling reports and marketing analyses. Plaintiffs would therefore have to show the existence of an overall conspiracy affecting the market in glassine and greaseproof paper, and that each defendant participated in such a conspiracy. These are, therefore, common questions for the class: while there may be differences in the way in which the alleged conspiracy was manifested, this would affect the issue of damages rather than that of the existence of a conspiracy in which each defendant participated.

### Impact of Conspiracy and Existence of Damage

To recover under Section 4 of the Clayton Act, plaintiffs must show both that they sustained a loss and that the loss was caused by a violation of the antitrust laws. It is settled that the causation, or "impact", may be demonstrated on a class-wide basis if the common proof demonstrates some damage to each member of the class. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

Plaintiffs have alleged a nation-wide conspiracy to increase prices of glassine and greaseproof paper to levels beyond those which would obtain in a competitive market. A common proof of impact could therefore be made by proof of such a conspiracy and the effect of such a conspiracy on market prices. As to purchasers who negotiated individualized prices, impact can be shown by a proof that the "base price" used as a starting point for negotiation was inflated by the artificial conditions caused by the alleged conspiracy. *Hedges Enterprises, Inc. v. Continental Group, Inc.*, 81 F.R.D. 461 (E.D.Pa.1979). This is the theory that plaintiffs have argued: they expect to be able to prove that, as regards several defendants, a rise in list prices has been

shortly followed by a rise in negotiated prices. Proof of impact can therefore be made in common for the class.

### Fraudulent Concealment

 In order to toll the four–year statute of limitations for the Clayton Act, 15 U.S.C. § 15b, plaintiffs must show that defendants fraudulently concealed their unlawful actions, and that plaintiffs were unable, despite the exercise of due diligence, to discover the facts which support their claims. The proof of whether there was fraudulent concealment by defendants, which involves proof of actions by the defendants to conceal the conspiracy, is common to the class. Whether each plaintiff exercised due diligence is a question peculiar to each plaintiff.

The questions common to the class are, therefore, (1) the existence, nature, scope, efficacy and impact of the alleged conspiracy; and (2) whether defendants fraudulently concealed their illegal activities. Individual questions are presented with respect to (1) the amount of damages suffered by each member of the class; and (2) whether the plaintiffs exercised due diligence. I find that the common questions predominate.

### Superiority of the Class Action Device

Finally, in light of the large number of potential claimants and the predominance of common questions, I find that the class action is superior to other available methods for resolving this controversy. The prosecution of individual actions would be unnecessarily duplicative and wasteful of the court's time. While some class members have large claims, most have small claims which would not justify the cost of individual litigation. Moreover, given the complexities and cost of antitrust litigation, it is not unlikely that even plaintiffs with larger claims would forego their claims rather than litigate them on an individual basis. *DuPont Glore Forgan, Inc. v. American Tel-*

*ephone & Telegraph Co.,* 69 F.R.D. 481 (S.D. N.Y.1975). The joinder of such a large number of plaintiffs is impractical. The class action, therefore is superior to the alternatives available to resolve this controversy.

### C.

Plaintiffs have satisfied the requirements of Rule 23(a) and (b). Accordingly, plaintiffs' motion for class certification will be granted, and the following class[5] will be certified as requested by the plaintiffs.

All proprietorships, partnerships, corporations and other business entities in the United States who purchased glassine and greaseproof paper from defendants, their divisions, affiliates or subsidiaries, from at least January 1, 1973 to the present date, excluding from the class (i) defendants, their divisions, affiliates or subsidiaries of the defendants, and other manufacturers of glassine and greaseproof paper and (ii) any federal, state and local government purchasers.

---

**5.** Defendants argue that any class certified should not include purchasers of large volumes of non–standardized products. As the requirements of Rule 23 are satisfied as to the class as

defined by plaintiffs, and, in particular, since common questions predominate over individual ones, the class will be certified as requested by plaintiffs.