## In re ALUMINUM PHOSPHIDE ANTITRUST LITIGATION.

This Document Relates to: All Actions.

Civ. A. No. 93–2452–KHV.

United States District Court, D. Kansas.

Feb. 13, 1995.

Deborah Farrar Quirk, Kansas City, MO, Thomas H. Brill, Mission Hills, KS, Issac L. Diel, Law Office of John P. Ryan, Jr., Grandview, MO, Joel C. Meredith, Krishna Narine, Meredith, Cohen & Greenfogel, P.C., Philadelphia, PA, Vernon N. Reaser, Jr., Reaser & Wall, Victoria, TX, for plaintiff National Bugmobiles, Inc., on behalf of itself and all others similarly situated.

Edmund S. Gross, Farmland Industries, Inc., Alvin D. Shapiro, Law Offices of Alvin D. Shapiro, Kansas City, MO, for intervenor-plaintiff and movant Farmland Industries, Inc.

David E. Everson, Jr., Tammy L. Womack, Stinson, Mag & Fizzell, Kansas City, MO, Nancy L. Heilman, Cohen & Grigsby, Pittsburgh, PA, for defendants Pestcon Systems Inc., Degesch America, Inc.

Eric D. Braverman, Employers Reinsurance Corp., Overland Park, KS, A. Bradley Bodamer, Morrison & Hecker, Overland Park, KS, James E. Wright, III, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for defendants Bernardo Chemicals Ltd., Inc., Christina S. Bernardo.

Floyd R. Finch, Jr., Katharine S. Bunn, Jeffrey J. Simon, Sally B. Surridge, Brian J. McGrath, James R. Ward, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Tessa K. Jacob, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, for defendant Inventa Corp.

G. Stanton Masters, Bryan Cave, Kansas City, MO, James L. Eisenbrandt, Bryan Cave, Overland Park, KS, Nancy L. Heilman, Cohen & Grigsby, Pittsburgh, PA, for defendant Detia–Degesch GmbH.

David E. Everson, Jr., Tammy L. Womack, Stinson, Mag & Fizzell, Kansas City, MO, G. Stanton Masters, Bryan Cave, Kansas City, MO, James L. Eisenbrandt, Bryan Cave, Overland Park, KS, Nancy L. Heilman, Cohen & Grigsby, Pittsburgh, PA, for defendant Detia Freyberg GmbH.

Floyd R. Finch, Jr., Katharine S. Bunn, Jeffrey J. Simon, Sally B. Surridge, Brian J. McGrath, James R. Ward, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Tessa K. Jacob, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, for defendant United Phosphorus, Ltd.

Eric D. Braverman, Employers Reinsurance Corp., A. Bradley Bodamer, Morrison & Hecker, Overland Park, KS, for defendant Casa Bernardo Ltd.

Thomas M. Bradshaw, Dianne M. Hansen, Armstrong, Teasdale, Schlafly & Davis, James R. Hobbs, Marilyn B. Keller, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, for defendant McShares Inc. dba Research Products Co.

### Memorandum and Order

VRATIL, District Judge.

This matter comes before the Court on *Plaintiffs' Motion for Class Certification*

*and Request for Hearing* (Doc. # 112) filed May 2, 1994. Plaintiffs National Bugmobiles, Inc., Anchor Fumigation and Pest Control, Inc., Rawe–Hart Incorporated d/b/a Dobyns–Hart Pest Control, Albert City Elevators Cooperative, General Utility Company, Inc., and Dico/Pacific Fumigation, Inc., claim that defendants Detia–Degesch GmbH, Detia Freyberg GmbH, Degesch America, Inc., Pestcon Systems, Inc., United Phosphorus Ltd., Inventa Corporation, Bernardo Chemicals Limited, Inc., Casa Bernardo Ltd., and McShares, Inc., d/b/a Research Products Company conspired to fix prices of aluminum phosphide products in violation of federal antitrust laws. Plaintiffs seek class certification, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of

> "all similarly situated persons, firms, corporations or other entities of any nature in the United States (but excluding defendants, their parents, subsidiaries, affiliates and any entity in which any defendants has (or had) an ownership interest) who purchased aluminum phosphide products directly from one or more of the defendants at any time from January 1, 1988 through October 31, 1993." *First Amended Consolidated Class Action Complaint,* ¶ 19.

Defendants challenge whether plaintiffs have properly demonstrated the requirements for class certification under Rule 23. Defendants also dispute the proper scope of the proposed class with respect to the time period and products covered. The Court held an evidentiary hearing on September 2, 1994, and December 5, 1994.[1] After thoroughly reviewing the record and carefully considering the evidence, the Court finds that the proposed class should be certified.

■ The determination of class certification is committed to the broad discretion of the trial court. *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir.1982). In deciding whether to certify a class, the Court must perform a "rigorous analysis" of whether the proposed class satisfies the requirements of Rule 23. *National Union*

*Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.,* 158 F.R.D. 681, 685 (D.Kan.1994) (quoting *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982)). The Court may not inquire, however, into the merits of the underlying case. *Anderson,* 690 F.2d at 799; *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988).

■ Plaintiffs, as the party seeking class certification, have the burden to demonstrate "under a strict burden of proof" that the requirements of Rule 23 are satisfied. *Rex v. Owens ex rel. State of Oklahoma,* 585 F.2d 432, 435 (10th Cir.1978). In doing so, they first must satisfy the prerequisites of Rule 23(a), that is, they must demonstrate that

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.Pro., Rule 23(a). After meeting these requirements, plaintiffs have the burden to demonstrate that the proposed class action fits within one of the categories described under Rule 23(b). In this case, plaintiffs seek to proceed under 23(b)(3), which requires that the Court find that "the questions of law or fact common to the members of the class predominate over any questions affecting individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

## A. Rule 23(a) Requirements

### 1. Numerosity

■ In order to satisfy the numerosity requirement of Rule 23(a)(1), plaintiffs "must present some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Rex,* 585 F.2d at 436. There is no set formula, however, for determining whether this requirement

---

1. The parties were unable to complete the presentation of evidence on September 2, 1994, so the Court continued the hearing to November 21,

1994. Upon joint request of both parties, the Court rescheduled and held the continuation hearing on December 5, 1994.

is met. *Id.* at 436. The class is sufficiently numerous if joinder of all class members is "impracticable." Rule 23(a); *Aguinaga v. John Morrell & Co.*, 602 F.Supp. 1270, 1278 (D.Kan.1985).

In support of numerosity, plaintiffs provide summaries of customer lists of defendants Degesch America, Research Products, Bernardo Chemicals, Pestcon, and Inventa. See Exhibits D2–H2 attached to Affidavit of Dr. Richard C. Hoyt (Doc. # 240). Based on these lists, plaintiffs estimate that there are hundreds of customers dispersed geographically throughout the United States. These estimates demonstrate sufficient numerosity, *see Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D.Kan.1991) (good faith estimate of at least 50 members sufficient size to maintain class action), and that joinder of all potential members of the proposed class would be impracticable. *See In re Home–Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 361 (N.D.Okla.1977) (geographic diversity among potential claimants adds to impracticability of joinder). Thus, plaintiffs have satisfied Rule 23(a)(1).

### 2. Commonality

Several questions of law and fact are common to plaintiffs' claims, including (1) whether defendants conspired to fix prices of aluminum phosphide products (2) which defendants participated in the alleged conspiracy; and (3) whether defendants charged prices that were higher than they would have been absent the alleged conspiracy. Based on these common questions, the Court finds that plaintiffs have met the commonality requirement of Rule 23(a)(2). *See, e.g., Cumberland Farms, Inc. v. Browning–Ferris Indus., Inc.*, 120 F.R.D. 642, 646 (E.D.Pa.1988) (quoting *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 335 (E.D.Pa.1976)) ("Antitrust price fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy.").

### 3. Typicality

The typicality element requires that the representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members. *Olenhouse*, 136 F.R.D. at 680 (citations omitted). This requirement does not mandate, however, that the claims of the representative plaintiffs be identical to those of the other class members. *Id.* Rather, the Court should look to whether the claims of the representative plaintiffs are "significantly antagonistic" to the claims of the proposed class. *Id.*

Plaintiffs point out that their claims are typical to those of the proposed class members in that they will have to prove the same elements that the absent class members would have to prove, that is, whether defendants participated in a price fixing conspiracy and, if so, the effect of such conspiracy on the price of aluminum phosphide products. Plaintiffs further contend that the fact and type of injury are the same among class members, though the exact amount of individual damages may vary. Defendants, on the other hand, claim that each individual plaintiff is uniquely situated because defendants sold different types of aluminum phosphide products to different customers for different prices. Therefore, defendants argue, there is no "typical" unit of aluminum phosphide purchased at a uniform price. Although this assertion may be true, however, it does not defeat typicality of plaintiffs' claims. *See, e.g., In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1036–37 (N.D.Miss. 1993).

Defendants further argue that the claims of the named plaintiffs are not typical of the class because the named plaintiffs do not represent every market of aluminum phosphide product purchasers. This factor, however, does not preclude class certification. If it later becomes apparent that certain types of purchasers are not adequately represented by the named representatives, the Court may require substitution or addition of a class representative or, alternatively, modify the class definition to exclude such purchasers. *See Fisher Bros. v. Mueller Brass Co.*, 102 F.R.D. 570, 575–76 (E.D.Pa. 1984). The Court finds that plaintiffs' claims are typical of and not significantly antagonis-

tic to those of the proposed class.[2] Thus, plaintiffs have met the requirement set forth in Rule 23(a)(3).

### 4. Adequacy of Representation

■■■■■ Adequacy of representation depends upon the qualifications and experience of plaintiffs' counsel and whether the representative plaintiffs have interests antagonistic to the class. *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679. Defendants attempt to cast doubt on the adequacy of representation by plaintiffs' counsel by citing internal conflicts between plaintiffs and their counsel at the beginning of this case with respect to choosing lead counsel. The record, however, does not reveal any such conflicts existing at the present time. Moreover, based on the Court's observation to date, the Court finds that plaintiffs' attorneys are well qualified and capable of conducting the litigation of this case.

■■■■■ Defendants also challenge the adequacy of representation by named plaintiffs. They make several arguments, including (1) that the deposition testimony of named plaintiffs indicates that they have no firsthand knowledge of facts to support the allegation of a price-fixing conspiracy and are not credible, and (2) that the representative plaintiffs are unlikely to prosecute the case vigorously because they have only small financial interests at stake. Upon review of the deposition testimony, the Court rejects defendants' assertions that the named plaintiffs will not adequately represent the proposed class. Rule 23 does not require class antitrust litigants to possess detailed knowledge of their lawsuit and be totally aware of all of the facts concerning the claims in issue. *See, e.g., In re Catfish,* 826 F.Supp. at 1037. Furthermore, that plaintiffs have small financial interests at stake does not preclude class certification. *See Ingram v. Joe Conrad Chevrolet, Inc.,* 90 F.R.D. 129, 132 (E.D.Ky. 1981) (small financial interest not determina-

tive of adequate representation, especially where class recovery is motivating force behind prosecuting action); *In re South Central States Bakery Prod.,* 86 F.R.D. 407, 418 (M.D.La.1980) (one purpose of class suit is to make possible vindication of claims which individually would be too small to justify legal action).

The Court finds that named plaintiffs have demonstrated that they and their counsel will adequately represent the proposed class, and that their interests are not antagonistic to the interests of the proposed class members. *See Olenhouse,* 136 F.R.D. at 680. Thus, plaintiffs also have satisfied Rule 24(a)(4).

### B. Common Questions Predominate Under Rule 23(b)(3)

Rule 23(b)(3) requires that plaintiffs demonstrate that common questions of law or fact predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly adjudicating the controversy. Defendants vigorously dispute whether plaintiffs have satisfied this requirement. In doing so they make a host of arguments which, in essence, attempt to characterize the aluminum phosphide market as so complicated that individual questions will necessarily predominate over common issues of proof. Specifically, they point out that there are several types of products containing aluminum phosphide (including tablets or pellets in flasks, cases, pouches and pails, and other prepackaged aluminum phosphide products including ropes, sachets, bags, chains, strips and blankets) and that each of these products are sold in several different types of markets.

■■■ Defendants argue that the dynamics of each aluminum phosphide product and market affect the type of injury suffered by each plaintiff. Therefore, defendants assert, proving the fact and type of injury to each plaintiff will involve individualized determinations. Plaintiffs' claim, however, is that the

---

**2.** Some defendants speculate that certain situations may arise which would create antagonistic interests between the representative plaintiffs and the remaining class members. The Court has reviewed these arguments and finds that they are without merit on the record before the Court. Of course, if a situation which creates antagonistic interests actually does arise, the Court may alter or amend the class certification order pursuant to Rule 23(c)(1).

alleged conspiracy caused defendants to charge artificially high prices for aluminum phosphide products. If successful on this claim, it is likely that each plaintiff would have experienced the same impact of paying more for aluminum phosphide products than they would have paid in a truly competitive market. *See, e.g., In re Catfish,* 826 F.Supp. at 1040, 1041 ("In an illegal price fixing scheme, there is a presumption that all purchasers will be impacted/injured by having to pay the higher prices."); *In re Wirebound Boxes Antitrust Litig.,* 128 F.R.D. 268, 272 (D.Minn.1989) (common proof of impact possible even though prices individually negotiated); *Fisher,* 102 F.R.D. at 577–78. While it is possible that the amount of each plaintiff's damages will require individualized proof, the Court does not believe that individual issues will predominate with regard to proving fact of injury.

 Defendants next argue that there is no class-wide method for determining damages and that proof of damages will depend on each class member's individual circumstances. They assert that pricing of aluminum phosphide products depends upon various factors including the type of product, the market in which it is used, the quantity purchased, the identity of the purchaser, and whether the seller offers any rebates, discounts or credits. Plaintiffs contend that a methodology exists by which they will prove damages on a class-wide basis. Whether damages actually will be proven on a class-wide basis remains to be seen. Nevertheless, the fact that individual proof as to the amount of damages may be necessary does not preclude class certification. *See In re Catfish,* 826 F.Supp. at 1043 (individual questions of damages often encountered in antitrust actions and rarely barrier to class certification); *Town of New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38, 42 (S.D.N.Y.

1990) (same); *In re Wirebound Boxes,* 128 F.R.D. at 272 (same); *Fisher Bros.,* 102 F.R.D. at 579 (same). Moreover, if individual proof as to damages later proves to be unmanageable, the Court may modify the certification order and decertify the class as to damages. *See New Castle,* 131 F.R.D. at 42.

Finally, defendants argue that plaintiffs' claim of fraudulent concealment will require individual proof as to due diligence and actual knowledge of the alleged conspiracy. The Court believes, however, that common issues with respect to the duty of due diligence among class members and acts by the defendants to conceal the alleged conspiracy will predominate. *See In re Catfish,* 826 F.Supp. at 1046. Moreover, to the extent individual determinations are necessary on the fraudulent concealment issue, they may be handled in separate proceedings along with individual amount of damages. *New Castle,* 131 F.R.D. at 43.

 In sum, the Court finds that common issues whether defendants conspired to fix prices and concealed such conspiracy predominate over individual issues and that a class action is the superior method for resolution of plaintiffs' claims.[3] *See United Nat. Records, Inc. v. MCA, Inc.,* 101 F.R.D. 323 (N.D.Ill.1984) (requiring each class member to establish defendants' liability at separate trials would constitute gross waste of time and effort of Court and parties). Thus, plaintiffs have satisfied the requirements of Rule 23(b)(3).

**C. Scope of the Class**

Defendants urge the Court to limit the scope of the proposed class to the time period and products covered by the criminal antitrust charges brought against some of the defendants.[4] Specifically, defendants argue that plaintiffs do not have sufficient evidence to support their claim of a conspiracy

**3.** Matters pertinent to the Court's finding on the superiority of the class action method include:

 (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.Pro., Rule 23(b).

**4.** On November 1, 1993, the government brought criminal charges against defendants Detia Degesch, Detia Freyberg, Degesch America, Pestcon, United Phosphorus, Inventa, and Casa Bernardo, alleging that they had conspired to raise

encompassing all aluminum phosphide prod-ucts and spanning a longer time period than that alleged in the criminal conspiracy.

 Tenth Circuit caselaw strictly prohibits the Court from examining the merits of plaintiffs' claims when determining whether to certify a class.[5] *See Anderson,* 690 F.2d at 799; *Adamson,* 855 F.2d at 676. *See also In re Infant Formula Antitrust Litig.,* 1992 WL 503465, *3 (N.D.Fla.1992) (substantive allegations of pleadings accepted as true when determining a class) (citing *Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978)). Plaintiffs have satisfied the requirements of Rule 23(a) and (b)(3); therefore, the Court finds that the proposed class should be certified. Should warranting circumstances arise during the course of this litigation, the Court may amend, alter, or decertify some or all of the issues certified by this order. *See* Fed. R.Civ.Pro., Rule 23(c)(1).

**IT IS THEREFORE ORDERED** that *Plaintiffs' Motion for Class Certification and Request for Hearing* (Doc. # 112) should be and hereby is sustained.

See also 864 F.Supp. 1034..

the price of aluminum phosphide pellets and tablets in January, 1990, and that such conspiracy continued until November, 1990. Detia Degesch and Pestcon pleaded guilty, and Bernardo Chemicals pleaded *nolo contendere.* Subsequently, the government dismissed the charges against Degesch America and Detia Freyberg. United Phosphorus proceeded to trial, but the court dis-missed the government's case after the close of the government's evidence.

5. Even if the Court were allowed to examine the merits of plaintiffs' claims, it would certify the proposed class based on the record presently before the Court.